Petition of **CLIPPER FISHING CORPORATION**, as owner of the Fishing Vessel **THE CLIPPER**, for exoneration from or limitation of liability.

United States District Court
S. D. New York.
Dec. 8, 1958.

Bigham, Englar, Jones & Houston, New York City, for petitioner, Charles A. Van Hagen, Jr., New York City, of counsel.

Mahar & Mason, New York City, Joseph F. Dolan, Harry Kisloff, Boston, Mass., for claimants, Frank C. Mason, James J. Mason, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

This proceeding for exoneration from or limitation of liability arises out of a collision between petitioner's fishing vessel "Clipper" and claimants' fishing vessel "Eunice-Lillian" which sank as a result.

The collision occurred on June 12, 1958 approximately 100 miles at sea while the Eunice-Lillian was proceeding from fishing grounds in the Atlantic with a catch of scallops to her home port of New Bedford, Massachusetts, and while the Clipper was on her way to the fishing grounds from her home port of New Bedford, Massachusetts.

The Clipper was tied up at Fulton Fish Market in New York when this proceeding was commenced, and this is the basis of this court's jurisdiction.

The claimants, who are the owners of the Eunice-Lillian, move, pursuant to the 54th Rule in Admiralty, 28 U.S.C.A., and 28 U.S.C. § 1404(a), to transfer the proceeding to the United States District Court for the District of Massachusetts.

28 U.S.C. § 1404(a) provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

As Circuit Judge Lumbard, sitting in the district court, said in New Jersey Barging Corp. v. T. A. D. Jones & Co., D.C.S.D.N.Y., 135 F.Supp. 97, 100:

"These latter words 'where it might have been brought' are, it seems to me, dispositive of the issue before us. Since petitioner had not been sued and his vessel had not been libelled when he brought this action, the only proper venue under Admiralty Rule 54 was 'in the District Court of the district in which the said vessel may be * * *.' Since the vessel was in this district

the proceeding could not have been brought elsewhere; therefore according to the clear language of § 1404(a) it cannot be transferred elsewhere now under that provision * * *."

■ The reasoning of the New Jersey Barging Corporation case applies to the case at bar. I therefore hold, following Judge Lumbard's decision there, that the cause is not transferable under Section 1404(a) since the vessel was in this district when the proceeding was brought and the proceeding could not then have been brought elsewhere.

The next question is whether the transfer provisions of the 54th Rule in Admiralty are applicable to the case at bar. Rule 54 provides:

"The said petition shall be filed and the said proceedings had in any District Court of the United States in which said vessel has been libeled to answer for any claim in respect to which the petitioner seeks to limit liability; or, if the said vessel has not been libeled, then in the District Court for any district in which the owner has been sued in respect to any such claim. When the said vessel has not been libeled to answer the matters aforesaid, and suit has not been commenced against the said owner, the said proceedings may be had in the District Court of the district in which the said vessel may be, but if said vessel is not within any district and no suit has been commenced in any district, then the petition may be filed in any District Court. *The District Court may, in its discretion, transfer the proceedings to any district for the convenience of the parties.*" (Emphasis supplied.)

■ While petitioner argues that the last sentence of Rule 54 relating to transfers applies only to cases where the petitioner has the option, under the rule, of commencing the action in any district court, I do not so read the rule. I agree with Judge Lumbard that this provision

applies to any situation where the forum chosen by petitioner "is clearly inconvenient for most of the parties and a substantially more convenient forum is available." New Jersey Barging Corp. v. T. A. D. Jones & Co., supra, at page 101. Cf. In re Petition of Baker-Whiteley Towing Co., D.C.D.Md., ·145 F.Supp. 904; Petition of Southern Steamship Co., D.C.D.Del., 132 F.Supp. 316; Petition of Backman, D.C.D.Del., 122 F.Supp. 896.

The question, therefore, is whether the balance of convenience of the parties warrants a transfer of this proceeding to the District of Massachusetts.

It would be well to state the facts relevant to this motion and its background in full detail.

The home port of both of the fishing vessels involved in the collision was New Bedford, Massachusetts, and both vessels operated regularly on fishing voyages out of that port. The four owners of the F/V Eunice-Lillian all reside in Fairhaven, Massachusetts, across the river from New Bedford. The eleven members of the crew of that vessel all live in or about New Bedford.

The petitioner is a Massachusetts corporation which is not authorized to do business in New York and has no office here. Its office and place of business is in Fairhaven. Its president resides there. The claimants allege that all of its crew reside in or about New Bedford and there is no denial of that fact.

The Coast Guard investigation of the collision was conducted in New Bedford where the testimony and exhibits of that investigation are presently located.

Shortly after the collision the owners of the sunken F/V Eunice-Lillian retained Joseph F. Dolan, Esq. of the Massachusetts bar, with offices in Boston, to represent them in their claims against the F/V Clipper arising out of the collision. The crew members of the Eunice-Lillian retained other Boston counsel to prosecute their claims for damages resulting from the collision. He joins in this motion.

Mr. Dolan in due course prepared a libel against the Clipper *in rem* and against her owner *in personam* asserting the claims of the owners and of the master and crew of the Eunice-Lillian. However, before filing the libel and directing the United States Marshal to arrest the vessel, Mr. Dolan, to avoid unnecessary loss to the owner of the Clipper, very courteously and considerately wrote it on October 8, 1958 advising it of his intention to file but stating that he was withholding directions to the marshal to arrest the vessel

> "* * * inasmuch as I assume either you or your underwriter will undertake to arrange for a bond rather than have the vessel arrested and prevented from fishing."

He suggested that the owner communicate with its underwriter to this effect.

On October 16, 1958 Bigham, Englar, Jones & Houston of New York City wrote to Mr. Dolan advising that his letter had been referred to them, that they were looking into the situation arising out of the collision, and stating:

> "* * * in the meantime we should very much appreciate it if you would be so kind as to send us a copy of the libel which you state you are filing in the United States District Court * * *."

Mr. Dolan promptly replied to that letter, and on October 20 wrote to Bigham, Englar, Jones & Houston enclosing a copy of the libel, and stating:

> "I assume that arrangements can be made shortly with respect to filing a bond in lieu of arresting the vessel. Under the circumstances I will refrain from having process issue with the thought in mind that I will be hearing from you in a reasonable length of time."

On October 21, 1958, by what could scarcely have been a coincidence, the F/V Clipper which had made all of its prior voyages during the year 1958 (some 22 in number) to and from its home port of New Bedford, was tied up at Fulton Fish Market in New York. On that day, the day after receipt by Bigham, Englar, Jones & Houston of Mr. Dolan's prompt and courteous response to their request for a copy of the libel, they took the following steps:

(1) Had two marine appraisers inspect the Clipper at Fulton Fish Market; (2) prepared and had signed by them their affidavits of value; (3) had the petition in the proceeding at bar verified by petitioner's president, who was a resident of Fairhaven, Massachusetts, where petitioner's office was, *at New York*; (4) had an ad interim stipulation for value issued by a surety company here; (5) submitted and had signed the order restraining the prosecution of suits against the vessel and her owner, as well as the other usual orders in limitation proceedings; and (6) delivered to the marshal the appropriate form of notice of filing the petition. The Clipper promptly resumed her fishing from New Bedford and continues to operate from there.

All this was done despite the exchange of correspondence between Mr. Dolan and the proctors for the petitioner, and despite the decency and consideration which he had shown both to them and their client. On the next day, October 22, however, Bigham, Englar, Jones & Houston did take the trouble to write to Mr. Dolan thanking him for his "very kind favor of October 20 enclosing copy of your libel", advising him of the steps that had been taken the previous day, and enclosing copies of the petition, the order of reference, the notice and a certified copy of the order directing the issuance of monition and restraining all suits except in this proceeding in this district.

This proceeding has not a single tie or connection with this district except the certainly not unplanned presence of the Clipper at Fulton Fish Market on October 21. On the contrary, everything, including parties, witnesses, the vessels themselves, their home ports, the ports from which they were operating, the Coast Guard proceedings and the records, is in the District of Massachusetts

where litigation concerning this collision clearly belongs.

The conspicuous lack of merit in the petitioner's contention that the facts show the action should remain here is illustrated by the statement made in the affidavit of a member of the firm of petitioner's proctors as to the convenience of Brieze, the petitioner's president, who resides in Fairhaven where the petitioner's office and place of business is. This statement reads as follows:

"Your deponent submits that it is not for the claimants to attempt to tell the petitioner's president how inconvenienced he is for, after all, he is the best judge of that. Instead of Mr. Brieze being inconvenienced by having this matter brought in this District, on the contrary, he found it entirely convenient. He transacts a great deal of his business in the City of New York. His insurance brokers and his insurance companies, or their agents or representatives, are in New York, and Mr. Brieze has great confidence in his brokers. He also appears to have a considerable degree of confidence in your deponent's firm * * *."

This is an extraordinary statement in the light of the facts. It is hardly necessary to characterize it.

The facts speak for themselves. Under the circumstances it would be utterly unconscionable to compel the eleven or more claimants who reside in and about New Bedford, most of whom sail as fishermen out of that port, to litigate the questions at issue in this district.[1]

This is particularly so in the light of what has transpired in this case and the dealings of the petitioner and his proctors with Mr. Dolan.

■ I hold in my discretion that this proceeding should be transferred to the District of Massachusetts for the convenience of parties pursuant to the 54th Rule in Admiralty. Indeed, to hold otherwise would in my opinion be an abuse of discretion.

The motion to transfer is therefore granted in all respects. If, as petitioner's proctors suggest, this will require the correction or amendment of orders previously issued by this court in this limitation proceeding, such provisions may be included in the order to be entered on this opinion which will be settled on notice.

---

1. The first question to be litigated in Massachusetts is that of liability and on that question the claimants are all witnesses. This is in contrast to the situation in New Jersey Barging Corporation v. T. A. D. Jones & Co., supra, where Judge

Lumbard held the matter in this district on the issue of liability and reserved the question of transfer to Connecticut, where most of the 140 claimants resided, until it was determined whether it was necessary to hear claims for damages.